O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANTHA SIM, | ) Case No. EDCV 12-00768-OP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND |
| MICHAEL J. ASTRUE, | ) ORDER |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 8, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 6 at 3.)

# I.

# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly considered the opinion of Plaintiff's treating psychiatrist;

(2) Whether the ALJ properly granted Plaintiff her due process rights during the testimony of the vocational expert ("VE");

(3) Whether the ALJ met the burden of proof at step five in finding Plaintiff capable of performing the jobs of machine packager, hospital cleaner, and floor waxer; and

(4) Whether the ALJ properly considered the lay witness testimony of Plaintiff's son.

(JS at 2-3.)

# II.

# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).

Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

### III.
### DISCUSSION

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of post-traumatic stress disorder ("PTSD"); depression; chronic left arm pain, unknown etiology; hypertension; and asthma. (Administrative Record ("AR") at 20.) The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a range of medium work but is precluded from exposure to excessive dust, fumes, odors, chemicals or smoke, and from work at or above shoulder level with the left non-dominant arm. (Id. at 22.) The ALJ found Plaintiff limited to non-public work in a habituated work setting, simple repetitive tasks, and non-intense contact with others. (Id.) The ALJ also found that Plaintiff has a "marginal education" and speaks only Cambodian. (Id.)

Relying on the testimony of the vocational expert ("VE"), the ALJ determined that given Plaintiff's age, education, work experience, and RFC, she is capable of performing the requirements of the occupations of machine packager (Dictionary of Occupational Titles ("DOT") No. 920.685-078), hospital cleaner (DOT No. 323,687-010), and floor waxer (DOT No. 381.687-034). (AR at 26-27.)

**B.    The ALJ Properly Considered the Opinion of Plaintiff's Treating Psychiatrist.**

   **1.    Background.**

On June 9, 2008, Plaintiff's treating psychiatrist, Ochuko G. Diamreyan, M.D., completed a check-box form titled "Mental Assessment." (Id. at 161-64.) In that form, Dr. Diamreyan indicated that Plaintiff was "moderately" to

1 "markedly" limited in such areas as understanding and memory, sustained
2 concentration and persistence, social interaction, and adaptation. (Id.) Dr.
3 Diamreyan also noted that Plaintiff is a "poor historian especially as a result of
4 language problem." (Id. at 163.) Dr. Diamreyan opined that Plaintiff's inability to
5 learn English might be "a result of her depression[,] lack of motivation,
6 hopelessness[,] poor memory and concentration," all of "which are reflection [sic]
7 of her mental disorder." (Id.)

8    On February 16, 2009, Dr. Diamreyan completed a form entitled "Short-
9 Form Evaluation for Mental Disorders." (Id. at 168-70.) In that form, he
10 indicated that he saw Plaintiff every two months and had first seen her on May 17,
11 2007. (Id. at 168.) He indicated her diagnosis as PTSD and noted that she was
12 disoriented as to time; moderately impaired with respect to concentration;
13 moderately impaired with respect to immediate, recent, and remote memory; has
14 an "English language problem"; has anxious and depressed mood and blunted
15 affect; mildly impaired judgment; was angry and anxious with insomnia and
16 nightmares, as well as isolated aches and pains; and had "poor" ability to
17 understand, remember and carry out complex instructions, maintain concentration,
18 attention, and persistence, perform activities within a schedule and maintain
19 regular attendance, complete a normal workday and workweek without
20 interruptions from psychologically based symptoms, and respond appropriately to
21 changes in a work setting. (Id. at 168-70) He stated that her condition was
22 "stable" and her "[p]rognosis is poor." (Id. at 170.)

23    The ALJ summarized these findings of Dr. Diamreyan and stated:
24    Th[ese] checklist-style forms appear to have been completed as an
25    accommodation to the claimant and includes only conclusions regarding
26    functional limitations without any rationale for those conclusions. The
27    undersigned finds this evidence has no probative value because it is not
28

4

supported by any objective evidence.

The undersigned has also read and considered the *Mental Disorder Questionnaire Form* completed by Dr. Diamreyan on September 9, 2009. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. Dr. Diamreyan reported the claimant required assistance with activities of daily living from her family. However, treatment records do not include such complaints. The record also reveals that the treatment has been generally successful in controlling those symptoms. Dr. Diamreyan noted the claimant was stable with decreased depression. However, in the form, Dr. Diamreyan reported the claimant's prognosis was "guarded." The severity of the limitations he assessed is not supported by the evidence as a whole or by the mixed findings from even his own mental status examination, which renders it less persuasive.

. . . .

. . . The minimal treatment records document routine and conservative care for both the physical impairments and the mental impairments.

(Id. at 24-25 (citations omitted).)

Plaintiff contends the ALJ improperly rejected Dr. Diamreyan's opinions for several reasons. First, she contends that there is no evidence to support the ALJ's conclusion that the June 9, 2008, form was completed to accommodate Plaintiff. (JS at 5.) She also contends that the ALJ's conclusion that Dr. Diamreyan's

opinions were not supported by objective evidence triggered the ALJ's duty to recontact Dr. Diamreyan to obtain clarification for the basis of his opinion.[3] (Id. (citing 20 C.F.R. § 416.912(e)(1).)

## 2. Legal Standard.

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons, supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record.[4] Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881

---

[3] It is ambiguous at best whether Plaintiff is challenging the ALJ's discounting of both of Dr. Diamreyan's reports, or only the earlier report. The Court will address the ALJ's consideration of both reports.

[4] Respondent argues that the Ninth Circuits standards exceed the requirements set forth by Congress and by the Commissioner at Congress' behest, which require only that an ALJ must give good reasons supported by substantial evidence in order to reject or discount a treating physician's opinion. (JS at 7 continue...

F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, the Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). A treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

### 3. The ALJ's Reasons Were Supported by the Record and Legally Sufficient.

Preliminarily, the ALJ noted that Dr. Diamreyan may have completed these forms as an accommodation to Plaintiff. Without more, however, this reason may not be sufficiently clear or convincing. See Lester, 81 F.3d at 832 (quoting Ratto v. Sec'y, Dept. of Health and Human Servs., 839 F. Supp. 1415, 1426 (D. Or. 1993)) ("The Secretary may not assume that doctors routinely lie in order to help

---

[4]...continue
(citations omitted).) However, because the Court finds that the ALJ's decision satisfies even the stricter "clear and convincing" standard, it declines to address this issue.

their patients collect disability benefits."); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citing Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996)) (the source of report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion).  Although the record contains no evidence that Dr. Diamreyan deliberately embellished his assessment of Plaintiff's limitations in order to assist her with her benefits claim, the ALJ does note that the opinions were not supported by any objective evidence, thereby at least implying that there is no medical basis for the opinions expressed in these checklist forms .  See Reddick v. Chater, 157 F.3d 715, 725-26 (9th Cir. 1998) (ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient).  However, even if the ALJ's rejection of Dr. Diamreyan's opinions on this ground was improper, any error was harmless because the other reasons given were supported by substantial evidence of record and legally sufficient.

      The ALJ also noted that both reports were checklist-type forms consisting only of conclusions regarding functional limitations, with little or no rationale for those conclusions. (See, e.g., AR at 24, 161-64, 168-70.)  This is a clear and convincing reason for discounting the opinions of a treating physician.  Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that an ALJ may reject check-off forms that do not contain an explanation of the bases for their conclusions).

      Furthermore, these forms had no probative value because they were unsupported by, and even contradictory to, the objective evidence.  A review of Dr. Diamreyan's treatment notes show that Plaintiff basically received routine, conservative, and nonemergency treatment since the alleged date of onset. (AR at 217-39.)  Dr. Diamreyan's mental status examination findings consistently show Plaintiff to be within normal limits, and indicate that she is otherwise "stable"; the

later notes even show decreasing depression, insomnia, and nightmares, and reflect that Plaintiff is "doing better." (Id.) However, in the 2009 form, Dr. Diamreyan indicates Plaintiff's prognosis is "poor." (Id.) Thus, the fact that the treatment records do not support the more extreme opinions of the 2008 and 2009 reports was a clear and convincing reason supported by substantial evidence for discounting Dr. Diamreyan's opinions. See, e.g., Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that contradiction between a treating physician's opinion and his treatment notes constitutes a specific and legitimate reason for rejecting the treating physician's opinion); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that contradiction between treating physician's assessment and clinical notes justifies rejection of assessment); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); Thomas, 278 F.3d at 957 (ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings).

Finally, the ALJ discredited Dr. Diamreyan's opinions in part because he "relied quite heavily on the subjective reports of symptoms and limitations provided by [Plaintiff], and seemed to uncritically accept as true most, if not all, of what [she] reported." (AR at 25, 235-39.) The ALJ also found Plaintiff to be less than credible, and Plaintiff does not dispute that finding. An ALJ may reject a treating physician's opinion because it was based on the claimant's properly discredited subjective complaints. Thomas, 278 F.3d at 957.

Based on the foregoing, the Court finds there was no error.

**4.     There Was No Duty to Further Develop the Record.**

Under the Commissioner's regulations, both the disability benefits claimant

and the Social Security Administration bear a regulatory responsibility for developing the evidentiary record. In fact, the claimant must produce medical evidence showing that the claimant has an impairment and how severe that impairment is during the time the claimant claims to be disabled. See 20 C.F.R. §§ 404.1512(c) (applicable to claims for disability benefits), 416.912(c) (applicable to claims for SSI benefits). Before deciding that a claimant is not disabled, the Administration must develop a claimant's complete medical history for at least the twelve months preceding the month in which the claimant files his application. The SSA must make every reasonable effort to help the claimant get medical reports from the claimant's medical sources when the claimant gives permission to request the reports. See 20 C.F.R. §§ 404.1512(d), 416.912(d).

The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where the claimant is represented by counsel. See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)); Crane, 76 F.3d at 255 (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." See Tonapetyan, 242 F.3d at 1150 (citing Smolen, 80 F.3d at 1288). That duty is heightened when the claimant is unrepresented or is mentally ill and thus unable to protect his or her own interests. Celaya, 332 F.3d at 1183; see also Tonapetyan, 242 F.3d at 1150; Crane, 76 F.3d at 255. However, it is the plaintiff's burden to prove disability. Bayliss, 427 F.3d at 1217 (quoting Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) ("The claimant bears the burden of proving that she is disabled")).

When the duty to develop the record is triggered, the ALJ can develop the

record by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources; (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines the ability to resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for more supplementation. Tonapetyan, 242 F.3d at 1150; 20 C.F.R. § 416.917.

In this case, the evidence relied on by the ALJ was not so ambiguous or inadequate as to trigger the ALJ's duty to supplement the record. The record reflects that Plaintiff was advised prior to the date of the administrative hearing that if there was more evidence she wanted the ALJ to see, she should submit it as soon as possible. (AR at 77.) Plaintiff also was advised to contact the Administration if she needed help securing medical evidence, including the issuance of a subpoena. (Id.) Consequently, the Court has no basis for finding or concluding that the Administration failed to fulfill its affirmative obligation under 20 C.F.R. §§ 404.1512(d) and 416.912(d) to assist Plaintiff in securing medical evidence from her treating sources prior to the hearing. The ALJ's actions were sufficient to satisfy his duty to develop the record with respect to Plaintiff's medical conditions.

Moreover, after the decision was denied, Plaintiff was informed that she could appeal the decision and send a written statement about the case "and any new evidence" with her appeal. (Id. at 15-16.) Plaintiff did not send any additional records from Dr. Diamreyan to support her appeal.

Based on the foregoing, the Court finds that there was no reason for the ALJ to contact Dr. Diamreyan for further information. Thus, there was no error.

/ / /

/ / /

C. **<u>Any Error in Failing to Interpret the Testimony of the Vocational Expert Was Harmless.</u>**

Plaintiff contends that her due process rights were violated during the hearing when the ALJ instructed the interpreter not to interpret the testimony of the VE for Plaintiff. (JS at 10 (citing AR at 46).)

On the day of the hearing, the unrepresented Plaintiff appeared at the hearing with her son, Carre Sim. (AR at 33-34.) Plaintiff's attorney had quit representing her three days before the hearing but when asked, Plaintiff declined the opportunity to obtain a new representative for purposes of the hearing. (<u>Id.</u> at 34.) Plaintiff did not appoint her son as her designated representative for purposes of the hearing. Because Plaintiff's ability to understand and speak English is limited, a Cambodian interpreter was provided. (<u>Id.</u> at 33.) The interpreter translated the ALJ's questions and Plaintiff's responses. (<u>Id.</u> at 34-40.) Plaintiff's son also testified at the hearing, in English, and the interpreter also translated those questions and answers. (<u>Id.</u> at 40-46.)

However, when it came time to question the VE, the record reflects the following:

>   ALJ: At this part, I'm going to turn to – let her know.  I'm going to ask questions of the Vocational Expert.  Ms. --
>
>   INTR:  You don't want me to –
>
>   ALJ:  No, actually, if it's okay, the son can listen.  If you have any – we'll let you ask any questions, okay, if there's any – is that all right with you?
>
>   WIT:  Okay.  Yes –
>
>   ALJ:  So, if –

1    WIT:  – Your Honor.

2    ALJ:  – there's anything you don't understand – I think, right
now, you're probably more attentive than your mom, so, if you don't
mind, we'll just, we'll just go ahead. I, I'll do this in English, and you
can listen.

    WIT:  Yes, Your Honor.

    ALJ:  Okay.

(Id. at 46.)  The ALJ did not ask Plaintiff if this was agreeable to her.  (Id.)

The ALJ then asked the VE if he understood that he was to be an impartial expert and not slant his testimony either in favor of or against Plaintiff, and the VE stated that he did.  (Id. at 47.)  The ALJ then suggested a hypothetical individual with Plaintiff's limitations and vocational profile, and asked whether there were jobs that such an individual could perform.  (Id. at 47-49.)  The VE identified three jobs.  (Id. at 48-49.)  The ALJ then asked a second hypothetical asking whether the hypothetical individual could perform those same jobs if she was unable to complete a forty-hour workweek because of fatigue.  (Id. at 49.)  The VE testified that such an individual would not be employable on a regular and full-time basis.  (Id.)  The ALJ then asked Plaintiff's son whether he had any questions for the VE or comments he wished to make.  (Id.)  Plaintiff's son responded that he did not.  (Id.)  The ALJ concluded the hearing and asked Plaintiff if there was anything she wanted to add, and she replied there was not.  (Id. at 49-50.)

Plaintiff contends that she never agreed to allow her son to be her designated representative, and her son did not have her authority to act as her representative at any time during the hearing, including during the testimony of the VE.  (JS at 10-11.)  Nor did she ever give an oral or written waiver of her right to during the testimony of the VE.  (Id. at 10.)  She contends therefore, that she

was denied her right to be present during a portion of the hearing. Moreover, because she was unable to understand any of the VE's testimony, and her son was not her designated representative, she was denied her right to cross-examine the witness at the hearing. (Id. at 10-11.)

In a disability hearing, a claimant must receive meaningful notice and an opportunity to be heard. Udd v. Massanari, 245 F.3d 1096, 1099 (9th Cir. 2001). Moreover, "[a] claimant in a disability hearing is not entitled to unlimited cross-examination, but is entitled to such cross-examination as may be required for a full and true disclosure of the facts." Copeland v. Bowen, 861 F.2d 536, 539 (9th Cir. 1988) (citing Solis v. Schweiker, 719 F.2d 301, 302 (9th Cir. 1983)). The ALJ has the discretion to decide when cross-examination is warranted. Id.

The Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") at I-2-6-10 addresses the use of foreign language interpreters:

> If a claimant has difficulty understanding or communicating in English, the ALJ will ensure that an interpreter, fluent in both English and a language in which the claimant is proficient, is present throughout the hearing.

Aman v. Astrue, No. 1:10-cv-00426-MHW, 2011 WL 4505173, at *8 (D. Idaho Sept. 28, 2011) (citing http://www.socialsecurity.gov/OP Home/hallex/I-02/I-2-6-10.html).

HALLEX is an "internal guidance tool" for use by ALJs and other staff members, is not published in either the Federal Register or the Code of Regulations, and does not have the force of law. Moore v. Apfel, 216 F.3d 864, 868-69 (9th Cir. 2000). "However, traditional notions of due process would suggest that without an interpreter, a claimant unable to communicate in English

would hardly receive 'a full hearing . . . in accordance with the beneficient purposes of the [Social Security] Act.'" Martinez v. Astrue, No. 3;07cv699 (SRU), 2009 WL 840661, at *2 (D. Conn. 2009) (citing Echevarria v. Sec'y of Health and Human Serv., 685 F.2d 751, 755 (2d Cir. 1982)).  The Court agrees, and finds, therefore, that failure to translate the testimony of the VE, arguably a key aspect of Plaintiff's hearing, violated Plaintiff's due process rights.

However, to borrow from the context of immigration hearings, to succeed on a due process claim of inadequate translation or failure to translate a portion of the proceedings, Plaintiff must show that the untranslated testimony would have affected the outcome of the hearing.  See Tejeda-Mata v. INS, 626 F.2d 721, 727 (9th Cir. 1980); see also Acewicz v. U.S. I.N.S., 984 F.2d 1056, 1063 (9th Cir. 1993); Aman, 2011 WL 4505173, at *9.  In this case, Plaintiff never asked for a translation of the transcribed expert testimony, either during or after the hearing.  Nor did she or her counsel contest the fact to the Appeals Council that she did not have an opportunity to adequately cross-examine the VE during the hearing, or that she had issues with the VE's qualifications.  (AR at 12.)  Moreover, Plaintiff has failed to indicate what questions she would have asked the VE that would have made a difference to the outcome of the hearing.

In short, Plaintiff has failed to demonstrate any prejudice from the failure to translate the VE testimony.  As a result, the Court finds that the error was harmless and remanding on this issue would be no more than a futile gesture.  Tejeda-Mata, 626 F.2d at 727.  Thus, Plaintiff is not entitled to relief on this claim.

**D.** **There Was No Inconsistency Between the ALJ's Findings Regarding Plaintiff's Ability to Perform the Jobs of Machine Packager, Hospital Cleaner, and Floor Waxer, and the DOT.**

Plaintiff contends that the requirements of the jobs of hospital cleaner and floor waxer are inconsistent with her RFC.

First, she notes that the job of hospital cleaner requires Language Level Two skills, and Plaintiff has a marginal education and is unable to communicate in English. (JS at 14 (citing 20 C.F.R. §§ 404.1564, 416.964).) She also contends she cannot perform this job because it would require her to be exposed to public work activity. (Id. at 19.) Defendant concedes that Plaintiff would be unable to do this job because of her marginal education and inability to speak English. (Id. at 21.) The Court agrees. Thus, it was error to find Plaintiff could perform this job.

Next, Plaintiff contends that she cannot perform the job of floor waxer because of the RFC limitation precluding her from exposure to excessive fumes, odors, and chemicals. (AR at 22.) She notes that the DOT indicates that the floor waxer position would require her to be exposed to various cleaning solvents and compounds that would likely include chemicals causing excessive fumes and/or odors. (JS at 20.) Defendant contends that according to the DOT, floor waxers are never exposed to atmospheric conditions or toxic, caustic chemicals and, therefore, the requirements of the job are not inconsistent with Plaintiff's RFC. (Id. at 22.) The Court is not persuaded that a job that requires using "cleaning solvents and compounds," but that does not expose a worker to "atmospheric conditions" or "toxic, caustic chemicals," nevertheless does not expose a worker to *fumes, odors*, and *chemicals*. DOT No. 381.687-034. The Court will assume, therefore, without deciding, that the position of floor waxer might indeed expose Plaintiff to excessive fumes, odors, or chemicals.

However, even if the ALJ erred in finding that Plaintiff was capable of performing the jobs of hospital cleaner and floor waxer, the error was harmless because the ALJ made the alternative finding that Plaintiff could perform the job of machine packager, and Plaintiff does not argue that this job was inconsistent with her RFC. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th

Cir. 2008) (harmless-error rule applies to review of administrative decisions regarding disability); see also Gallo v. Comm'r of Soc. Sec. Admin.., 449 F. App'x 648, 650 (9th Cir. 2011) ("Because the ALJ satisfied his burden at Step 5 by relying on the VE's testimony about the Addresser job, any error that the ALJ may have committed by relying on the testimony about the 'credit checker' job was harmless" (citing Carmickle, 533 F.3d at 1162)). The VE also stated that there were 6,000 such jobs in the region and 152,000 in the nation. (AR at 48.) This constitutes a significant number. See Meanel, 172 F.3d at 1115 (between 1,000 and 1,500 jobs in the local area is a "significant number"). Thus, if Plaintiff can work as a machine packager, then she was not disabled as this job was sufficient to support the ALJ's step five determination.

To the extent Plaintiff contends the ALJ erred in failing to ask the VE whether her testimony was consistent with the DOT, any error was harmless because there was no conflict with respect to the job of machine packager. Thus, the Court finds that any error was harmless, and Plaintiff is not entitled to relief on this claim.

E.     **The ALJ Properly Considered the Lay Witness Testimony.**

Plaintiff contends that the ALJ failed to properly consider the lay witness testimony of Plaintiff's son, who testified at the hearing that her condition has gotten worse. (AR at 42.) He also testified that her depression had increased since another son had joined the army and did not get better when he got out of the army; he believes Plaintiff is depressed because he and his brother are out of work; she has a sad face in the morning; she has been depressed since separating from her husband more than seven years ago; she complains of headaches and hip pain; she has headaches every day; and he does not believe she could work for forty hours in a week because of fatigue. (Id. at 42-44.)

The ALJ stated the following with respect to Mr. Sims' testimony:

17

>While a layperson can offer an opinion on a diagnosis, the severity of the claimant's symptoms, or the side effects of medications in relationship to the claimant's ability to work, the opinion of a lay person is far less persuasive on those same issues than are the opinions of medical professionals as relied on herein.  In addition, the opinion of the claimant's son is not an unbiased one because he has a familial motivation as well as a financial interest in seeing the claimant receive benefits in order to increase the household income since the claimant was living with him at the time he testified,.  Most importantly, his statements are not supported by the clinical or diagnostic medical evidence that is discussed elsewhere in this decision.  The undersigned finds the statements of the claimant's son are not credible to the extent his statements are inconsistent with the residual functional capacity assessment herein.

(Id. at 23.)

Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provide that, in addition to medical evidence, the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [his] ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  This applies equally to the sworn hearing testimony of witnesses (see Nguyen, 100 F.3d at 1467), as well as to unsworn statements and letters of friends and relatives.  See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000).  If the ALJ chooses to reject such evidence from "other sources," he may not do so without comment. Nguyen, 100 F.3d at 1467.  The ALJ must provide "reasons that are germane to

each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ provided sufficient reasons germane to Plaintiff's son for rejecting his testimony.

The ALJ referred to Plaintiff's son's motivation and possible bias since Plaintiff was living in his household at the time of the hearing.  (AR at 23.)  An ALJ may reject a lay witness' testimony if the ALJ finds the witness to be biased. See, e.g., Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (finding the ALJ's consideration of the claimant's prior girlfriend's close relationship with the plaintiff and desire to help him as a possible reason for bias was a reason germane to that witness).  However, "[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony." Smolen, 80 F.3d at 1289; see also Valentine, 574 F.3d at 694 (finding that being an interested party in the abstract was insufficient to reject a spouse's testimony).  Here, the ALJ did not discredit Plaintiff's son simply by virtue of his being a family member – he noted that Plaintiff was at that time a member of his household.  Thus, this is a sufficient reason germane to the witness for discrediting his testimony.

Furthermore, the ALJ gave less weight to Plaintiff's son's testimony to the extent he was offering an opinion on her diagnosis, the severity of her symptoms, or the side effects of her medication in relation to her ability to work.  (AR at 23.)  An ALJ need not discuss "medical diagnoses" made by lay witnesses because they "are beyond the competence of lay witnesses and therefore do not constitute competent evidence." Nguyen, 100 F.3d at 1467 (citing 20 C.F.R. § 404.1513(a)). "However, lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Id. (citations omitted).  Here, the ALJ did not completely reject Mr. Sims' testimony to this effect.  The ALJ merely gave the testimony less weight than he gave to the opinions of the medical professionals on

which he relied.  (AR at 23.)  This was not error.

Finally, the ALJ also found that the statements of Plaintiff's son were not supported by the clinical or diagnostic medical evidence of record.  (Id.)  One of the reasons deemed to be "germane" to a particular witness includes that the witness' testimony is contradicted by the medical evidence of record.  See Bayliss, 427 F. 3d at 1218; Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence"); Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) ("The ALJ properly discounted lay testimony that conflicted with the available medical evidence.").  Thus, this reason was germane to this witness and alone is enough to support the ALJ's finding.

Based on the foregoing, the Court finds that relief is not warranted on Plaintiff's claim.

**IV.**

**ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: February 7, 2013

_____
HONORABLE OSWALD PARADA
United States Magistrate Judge